UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
HUMBERTO RESTREPO,

                            Petitioner,

        - against -

NEW PHASE ELECTRICAL
CONTRACTORS, INC.,

                            Respondent.
------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-0321 (PKC) (MMH)

PAMELA K. CHEN, United States District Judge:

      Petitioner Humberto Restrepo ("Petitioner"), as Chairman of the Joint Industry Board of the Electrical Industry (the "JIB"), filed his Petition in this district on January 1, 2025, seeking to confirm an arbitration award rendered pursuant to the collective bargaining agreement between Local Union #3 of the International Brotherhood of Electrical Workers (the "Union") and New Phase Electrical Contractors, Inc. ("Respondent"). (Pet., Dkt. 1, at 1.) On April 23, 2025, after Respondent failed to appear or otherwise defend this action, Petitioner requested that his Petition be deemed as an unopposed motion for summary judgment. (Pet'r's Ltr., Dkt. 11.) On June 20, 2025, the Court granted Petitioner's request and converted his Petition to a motion for summary judgment ("Motion"). (*See* 6/20/2025 Dkt. Order.) For the reasons set forth below, the Court now grants summary judgment in favor of Petitioner.

## BACKGROUND[1]

### I.  The JIB and Employment Benefit Plans

The JIB is the administrator of various multiemployer employee benefit plans established and maintained pursuant to a collective bargaining agreement between the Union, certain employer associations, and independent or unaffiliated employers in the electrical and other related industries, including Respondent. (Pet., Dkt. 1, ¶¶ 4, 16.) The JIB is the administrator and fiduciary of applicable employee benefit plans ("ERISA Plans") within the meaning of §§ 3(16)(A)(i) and 3(21)(A) of Employee Retirement Income Security Act of 1974 ("ERISA")[2], codified as 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A).[3] (*Id.* ¶ 5; *see Finkel v. Firequench, Inc.*, No. 23-CV-4868 (EK) (JAM), 2024 WL 320870, at *1 (E.D.N.Y. Jan. 29, 2024), *R&R adopted as modified*, No. 23-CV-4868 (EK) (JAM), 2024 WL 4249224 (E.D.N.Y. Sep. 20, 2024); 29 U.S.C.A. § 1002 (West).

---

[1] The following facts are taken from the Petition and exhibits thereto and presumed true, given Respondent's failure to respond. *Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab.-Mgmt. Coop. Funds v. Countrywide Home Improvement, Inc.*, No. 17-CV-2570 (DRH) (ARL), 2017 WL 5690922, at *1 (E.D.N.Y. Nov. 27, 2017).

[2] These include the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry (the "DSP"), the Joint Apprenticeship and Training Program, and the National Electrical Benefit Plan. (Pet., Dkt. 1, ¶ 5.) Each plan is an employee benefit plan within the meaning of § 3(3) of ERISA, codified as 29 U.S.C. 1002(3), and a multi-employer plan within the meaning of § 3(37) of ERISA, codified as 29 U.S.C. § 1002(37). (*Id.* ¶ 7); *see* 29 U.S.C.A. § 1002 (West).

[3] Each of the ERISA Plans is also jointly administered by a board of trustees that is comprised of labor and management representatives who share equal representation in the administration of the ERISA Plans in accordance with Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). (Pet., Dkt. 1, ¶ 7.)

As administrator and fiduciary, the JIB undertakes several roles. First, it receives a weekly remittance consisting of contributions to each of the ERISA Plans[4] ("JIB Contributions") directly from each signatory employer and a Union assessment collected by the signatory employer from each Union member employed (the "Union Assessment").[5] (Pet., Dkt. 1, ¶ 6.) The JIB also retains a third-party record-keeper and investment manager Empower, who receives employee-elective contributions ("Employee Contributions") and employer contributions ("Employer Contributions") (collectively, "DSP Contributions") remitted by the signatory employers, allocates these remittances to the relevant individual accounts, and enables individuals to then "direct the investment of their DSP Contributions from among various investment alternatives selected by the JIB in conjunction with Empower." (*Id.* ¶¶ 8, 11.) Finally, the JIB may collect employee loan payments due to the Union, payments against loans made from benefits plans, and contributions to fund the operations of the JIB via employee deductions from their paychecks. (*Id.* ¶¶ 9–10.)

## II. The Collective Bargaining Agreement

The Union entered into a collective bargaining agreement with the New York Electrical Contractors' Association, Inc. and the Association of Electrical Contractors, Inc. (collectively, the "Associations") covering the period of April 10, 2019 through April 13, 2022 (the "2019-2022 CBA"). (*Id.* ¶ 17.) The 2019-2022 CBA states that it "shall remain in effect until April 13, 2022 at 4:00 P.M., unless otherwise provided in this Agreement. It shall continue in effect from year to year thereafter, provided, however, any party hereto may terminate this Agreement on April 13, 2022, and any time thereafter by giving the other party at least ninety (90) days' notice in writing of modification or termination prior to April 13th of such year." (*Id.* ¶ 19 (quoting

---

[4] Except for the DSP. (*Id.* ¶ 6.)

[5] The JIB acts as a mere collection agent with respect to the Union Assessment. (*Id.*)

3

Agreement and Working Rules, Dkt. 1-2, at 99).)  On May 11, 2022, the Union and the Associations extended the 2019-2022 CBA until April 9, 2025. (*Id.* ¶ 18; *see* Mem. of Agreement ("MoA"), Dkt. 1-3, at 1 (setting new contracting term until April 9, 2025 (the "2022-2025 CBA," together with the 2019-2022 CBA, the "CBA")).)  On December 19, 2023, Respondent assented to "be bound by all of the provisions of the [CBA] and working rules." (Pet., Dkt. 1, ¶ 16; Ltr. of Assent, Dkt. 1-1).  To date, neither the Union, the Associations, nor Respondent have provided the required notice to terminate the CBA, which remains in effect upon all parties including Respondent. (Pet., Dkt. 1, ¶¶ 20–21.)

Under the CBA, Respondent is required to make the employee benefit plan payments discussed *supra*, including to the ERISA Plans and the Non-ERISA Plans, "for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf [the relevant contributions] are made." (*Id.* ¶ 22 (citing Agreement and Working Rules, Dkt. 1-2, at 11–18).)  If Respondent fails to remit contributions and has not submitted payroll reports for such unpaid contributions, under the CBA's Policy for the Collection of Delinquent Contributions (the "Delinquency Policy"), the JIB may "use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer." (Pet., Dkt. 1, ¶ 27; Delinquency Policy, Dkt. 1-4, at 5.)  The Delinquency Policy also holds that "interest shall be calculated at the rate set forth in Section 6621 of the Internal Revenue Code." (Delinquency Policy, Dkt. 1-4, at 4.)  Furthermore, Respondent "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages of [20 percent], in the event of entry of Judgment against [Respondent] in an action or proceeding to collect delinquent contributions," (Agreement and Working Rules, Dkt. 1-2, at 21), as well as "liquidated damages

4

and attorneys' fees and costs if legal action is commenced," (Pet., Dkt. 1, ¶ 29; Delinquency Policy, Dkt. 1-4, at 4). Finally, under JIB's Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits ("Arbitration Procedures"), an arbitrator shall have the jurisdiction to determine any disputes between the "JIB against an Employer, related to the Employer's obligation to contribute to the [ERISA Plans], including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs." (Arbitration Procedures, Dkt. 1-5, at 2.)

### III. The Arbitration

After Respondent failed to remit JIB Contributions for four payroll weeks in March 2024 and DSP Contributions for nine payroll weeks between January and March 2024, Petitioner initiated arbitration before the designated arbitrator, Stephen F. O'Beirne, Esq. (Pet., Dkt. 1, ¶¶ 32–33.) Petitioner noticed said arbitration by mailing a Notice of Intent to Arbitrate with Statement of Claims by electronic mail to Respondent. (Notice, Dkt. 1-6.) In its written submission to the arbitration, Petitioner stated that Respondent owed: "(1) JIB Contributions for payroll weeks ending March 6, 2024 through and including March 27, 2024 of $27,598.64; (2) DSP Contributions for payroll weeks ending January 24, 2024 through and including March 27, 2024 of $26,625.90; (3) total interest of $4,598.16; (4) liquidated damages of $10,844.91; and (5) attorneys' fees and costs of $2,550.00." (Pet., Dkt. 1, at ¶ 35; *see* Arbitration Mem. of Law, Dkt. 1-7, at 18–19.) Respondent failed to provide any submissions or otherwise contest Petitioner's claims. (*Id.* ¶ 36; Opinion and Award ("Award"), Dkt. 1-9, at ECF 6.)

On October 15, 2024, the arbitrator issued his award (the "Award"), finding "that Respondent did violate the CBA" and ordering Respondent to pay the award of $72,217.61 consisting of: (1) Required Contributions in the total amount of $54,224.54, (2) interest of

$4,598.16, (3) liquidated damages of $10,844.91, (4) and legal fees and costs of $2,550.00. (Award, Dkt. 1-9, at ECF 7–8.) The arbitrator also found Respondent liable for Petitioner's attorneys' fees and costs. (*Id.* at ECF 8.) To date, the Award has not been vacated or modified, and no application for such relief is pending. (Pet., Dkt. 1, at ¶ 41.)

On January 17, 2025, Petitioner filed his Petition seeking confirmation of the Award in all respects, including $72,217.61 pursuant to the Award; $2,398.20 in attorneys' fees and costs arising out of the Petition; and any other relief deemed just and proper. (*Id.* at 10.) On April 23, 2025, after Respondent had failed to respond to the Petition, Petitioner requested that the Petition be deemed an unopposed motion for summary judgment. (Pet'r's Ltr., Dkt. 11.) On June 20, 2025, the Court granted Petitioner's request and converted the Petition to a Motion for Summary Judgment. (6/20/2025 Dkt. Order.)

## LEGAL STANDARD

"A federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) (quoting *N.Y. City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc.*, 826 F.3d 611, 618 (2d Cir. 2016)). Where an award is issued pursuant to a collective bargaining agreement, the Supreme Court has instructed that "[a]s long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *Finkel v. Firequench, Inc.*, 2024 WL 320870, at *4 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)), *R&R adopted as modified*, 2024 WL 4249224 (E.D.N.Y. Sep. 20, 2024).

Because a petition to confirm a labor arbitration award is typically accompanied by a record, "courts treat an unanswered petition to confirm an arbitration award 'as an unopposed

6

motion for summary judgment.'" *Countrywide Home Improvement*, 2017 WL 5690922, at *2 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109–10 (2d Cir. 2006)). "Although a summary judgment standard is applied to arbitration confirmation proceedings" and the moving party must show that it has "met its burden of demonstrating that no material issue of fact remains for trial," *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Upstate Interiors, LLC*, No. 19-CV-326 (MKB), 2021 WL 2576938, at *3 (E.D.N.Y. June 23, 2021) (citation omitted), confirmation of a labor arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (internal quotations and citations omitted); *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected [under 9 U.S.C. §§ 10 or 11]." (quoting 9 U.S.C. § 9)). The arbitrator's rationale need not be explained, and the Court should confirm the award "if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110 (internal quotations and citations omitted). Indeed, only "a barely colorable justification for the outcome reached" is necessary to confirm the award. *Id.* (internal quotations and citation omitted). Accordingly, courts "play only a limited role when asked to review the decision of an arbitrator." *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Misco, Inc.*, 484 U.S. at 36).

**DISCUSSION**

**I.      Confirmation of the Award**

Upon review of the uncontroverted evidence submitted with the Petition, the Court finds that the record submitted by Petitioner presents no genuine issue of material fact and provides the requisite "ground[s] for the arbitrator's decision." *D.H. Blair*, 462 F.3d at 110 (internal quotations

7

and citations omitted).  First, it is clear from the record that Respondent "is bound to [the CBA] between [the Union] and [the Associations] covering the period April 13, 2022 through April 9, 2025." (Award, Dkt. 1-9, at ECF 4–5; *see* Ltr. of Assent, Dkt. 1-1; MoA, Dkt. 1-3.) Second, it is clear from the record that the CBA "requires employers to submit payroll reports and benefit contributions to a variety of employee benefit plans administered by the JIB" and governed by ERISA. (Award, Dkt. 1-9, at ECF 5; *see* Agreement and Working Rules, Dkt. 1-2, at 15–18, 23, 24–25.)  Third, it is clear from the record that Respondent failed to meet certain obligations under the CBA for the periods identified by Respondent. (Award, Dkt. 1-9, ECF 6–7; *see* Breakdown of Benefits Owed, Dkt. 1-6, at ECF 25 (showing missed contributions); Payroll Inquiry, Dkt. 1-7, at ECF 33 (showing missing payroll information).)  Finally, it is clear from the record that, under the Delinquency Policy and Arbitration Procedures, both incorporated into the CBA by reference, the arbitrator had the authority to hear and decide the underlying dispute between Petitioner and Respondent, (Award, Dkt. 1-9, at ECF 6; *see* Delinquency Policy, Dkt. 1-4, at 1–2; Arbitration Procedures, Dkt. 1-5, at ECF 2), and that Respondents were provided notice of the dispute, (Notice, Dkt. 1-6, at ECF 1).  Therefore, the Court finds that the record presents no genuine issue of material fact and that there is more than "colorable justification" for the Award, *D.H. Blair*, 462 F.3d at 110 (internal quotations and citations omitted), which the Court confirms.

## II.     Prejudgment and Post-Judgment Interest

### A.     Prejudgment Interest

Under ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2).  Here, the Delinquency Policy provides that interest on unpaid contributions "shall be calculated at the rate set forth in Section 6621 of the Internal Revenue Code." (Delinquency

8

Policy, Dkt. 1-4, at 4.) The prejudgment rate under Section 6621 is the sum of the Federal short-term rate plus three percentage points, to be compounded daily. *See* 26 U.S.C. §§ 6621(a)(2), 6622(a). Petitioner does not request prejudgment interest as relief separate from the confirmation of the Award, (*see* Pet., Dkt. 1, at 10), which includes interest on the delinquent contributions, (Award, Dkt. 1-9, at ECF 7). Accordingly, the Court confirms the Award as-is and declines to award additional prejudgment interest. *See Finkel*, 2024 WL 320870 at *5 (recommending no prejudgment interest separate and apart from the interest that is already included in the award); *Team Air Express, Inc. v. A. Heffco Techs., Inc.*, No. 06-CV-2742 (NG) (CLP), 2008 WL 4790464, at *1 (E.D.N.Y. Sep. 3, 2008) ("[I]t is respectfully recommended that in the absence of a specific request, plaintiff not be awarded prejudgment interest[.]"), *R&R adopted*, 2008 WL 4790460 (E.D.N.Y. Oct. 28, 2008).

### B. Post-Judgment Interest

Post-judgment interest is "mandatory" in the Second Circuit and should be awarded at the statutory rate prescribed by 28 U.S.C. § 1961(a). *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–02 (2d Cir. 2004); *see also Lewis v. Whelan*, 99 F.3d 542, 546 (2d Cir. 1996) (affirming award of post-judgment interest in a confirmation proceeding); *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Golden Dev. & Constr. Corp.*, No. 17-CV-1051 (VSB) (JLC), 2017 WL 2876644, at *6 (S.D.N.Y. July 6, 2017) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered, including orders that confirm arbitration awards.") (internal citations omitted), *R&R adopted*, 2017 WL 3309737 (S.D.N.Y. Aug. 2, 2017). Though not explicitly identified as such in the Petition, (*see* Pet., Dkt. 1, at 10), Petitioner, in effect, seeks post-judgment because the Award includes interest "accru[ing] on the principal amounts owed until paid in full," (Award, Dkt. 1-9, at ECF 8). Accordingly, the

9

Court grants post-judgment interest from the date of entry of the judgment to the date when the judgment is satisfied, at the rate provided for by 28 U.S.C. § 1961.

### III. Petitioner's Attorneys' Fees and Costs[6]

#### A. Attorneys' Fees

Petitioner seeks a total of $1,878, reflecting 5.8 hours of work by its attorneys, Lillianna Iorfino ("Iorfino") and Maura Moosnick ("Moosnick"). (Pet., Dkt. 1, ¶ 49.) Parties are entitled to reasonable attorneys' fees and costs incurred in an action initiated to recover delinquent contributions pursuant to a collective bargaining agreement under Section 502 of ERISA. 29 U.S.C. § 1132(g)(2)(D). "Although that entitlement does not necessarily extend to petitions to confirm arbitration awards, courts tend to award fees when respondents refuse to abide by an arbitrator's decision without justification." *Finkel v. IDL Commc'n & Elec., Inc.*, No. 22-CV-5889 (NRM) (RML), 2023 WL 4565403, at *4 (E.D.N.Y. June 20, 2023) (internal quotations and citation omitted), *R&R adopted*, 2023 WL 4564911 (E.D.N.Y. July 17, 2023); *see Finkel v. Millennium Fire Servs., LLC*, No. 22-CV-6225 (RPK) (RML), 2023 WL 3620615, at *5 (E.D.N.Y. Apr. 6, 2023) (awarding fees incurred in confirmation proceeding); *Finkel v. JCF Elec., Inc.*, No. 21-CV-3161 (CBA) (RER), 2022 WL 3682834, at *4 (E.D.N.Y. Aug. 25, 2022) (same).

To determine a reasonable attorney's fee, courts must calculate a "lodestar figure" by multiplying the number of hours reasonably expended by a reasonable hourly rate, yielding a presumptively reasonable fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts consider the community in

---

[6] Petitioner's attorneys' fees and costs for the arbitration itself were included in the Award. (Award, Dkt. 1-9, at ECF 7.)

10

which the district court sits and look to the prevailing rates for attorneys in that field with comparable experience to determine what a reasonable client would pay. *See Gesualdi v. Bestech Transp.*, LLC, No. 14-CV-1110 (JS) (ARL), 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) ("The reasonableness of hourly rates is guided by the market rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (citation modified); *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *2 (E.D.N.Y. Jan. 29, 2020) (following the Second Circuit's "'forum rule,' which 'generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable rate'" (quoting *Trs. of NE Carpenters Health Pension, Annuity, Apprenticeship, and Labor Mgmt. Coop. Funds v. Cali Enters., Inc.*, No. 18-CV-3556 (SFJ) (AYS), 2019 WL 2076784, at *5 (E.D.N.Y. May 10, 2019)). "[T]he prevailing rates for attorneys in the E.D.N.Y. . . . are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Rudler*, 2020 WL 473619, at *2 (quoting *Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 404 (E.D.N.Y. 2019)).

    1.    <u>Moosnick's Fees</u>

Moosnick is a partner at Virginia & Ambinder, LLP ("V&A") with four years of practice experience, and she has billed her time at $410 per hour. (*See* Pet., Dkt. 1, ¶ 46; Billing, Dkt. 1-10.) Courts in this district have previously noted that Moosnick's requested hourly rate is high compared to her years of experience. *See Finkel*, 2024 WL 320870, at *7 (noting that "courts typically award hourly rates of $200-$250 for attorneys with more years of experience than [Moosnick]" and reducing her hourly rate to $200); *IDL Commc'n & Elec.*, 2023 WL 4565403, at *4 (finding Moosnick's requested hourly rate high for a second-year associate and

11

recommending reducing this to $200 per hour); *Millennium Fire Servs.*, 2023 WL 3620615, at *5 (same). While Moosnick is now a partner rather than an associate, the Court agrees that her requested hourly rate does not reflect her years of experience, regardless of her current title. The Court therefore reduces Moosnick's hourly rate to $300 and otherwise finds the 0.8 hours billed by Moosnick to be reasonable. (*See* Billing, Dkt. 1-10 (detailing total hours billed by Moosnick).) The Court awards Moosnick $240 in fees.

        2.     Iorfino's Fees

Iorfino is an associate at V&A with four years of practice experience, and she has billed her time at $310 per hour. (*See id.* ¶ 45.) Iorfino appears to have only begun her ERISA practice in November 2024. (*See id.*) Accordingly, the Court finds the requested hourly rate of $310 too high. *See, e.g.*, *Finkel v. J&H Elec. Contracting, Inc.*, No. 22-CV-4293 (MKB), 2023 WL 3948752, at *6 (E.D.N.Y. June 12, 2023) (reducing rate of $290 to $250 for associate who graduated in 2016 and had three years of ERISA litigation experience); *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281 (MKB) (RLM), 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022) (recommending $250 hourly rate for associate with seven years' experience), *R&R adopted*, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022); *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. CEI Contractors, Inc.*, No. 18-CV-3467 (JFB) (GRB), 2019 WL 117603, at *6 (E.D.N.Y. Jan. 7, 2019) (reducing the hourly rate for associate who graduated four years prior from $265 to $200). The Court therefore reduces Iorfino's hourly rate to $200.

Regarding the 5 hours billed by Iorfino, the Court finds 5 hours to be high for a petition and memorandum of law such as those submitted in this case. (*See* Billing, Dkt. 1-10 (detailing total hours billed by Iorfino)); *see, e.g., J&H Elec. Contracting, Inc.*, 2023 WL 3948752 at *6 (finding 2.5 hours billed to be reasonable); *IDL Commc'n & Elec.*, 2023 WL 4565403, at *5

12

(finding 3.2 hours billed to be reasonable); *Millenium Fire Servs.*, 2023 WL 3620615, at *5 (finding 4.1 hours billed to be reasonable). However, the additional time expended appears to correspond with Iorfino's relative lack of experience with ERISA complaints. The Court therefore accepts Iorfino's total billed time of 5 hours, and awards Iorfino $1,000 in fees.

### 3.   Fees for Legal Assistants

Petitioner's counsel also notes that "V&A will bill the legal assistants' time at a rate of $155 per hour for work performed in connection with this action." (*Id.* ¶ 47.) However, the Court sees no billing by or from any legal assistants, or at the hourly rate of $155. (*See* Billing, Dkt. 1-10.) Therefore, it assumes there are no such fees to recover, and awards none.

### B.   Costs

Finally, Petitioner's counsel requests "$520.20 in court filing fees and service charges upon the filing of the instant petition." (Pet., Dkt. 1, ¶ 50.) ERISA provides for the recovery of costs associated with litigation commenced to recover unpaid fringe benefit contributions. *See* 29 U.S.C. § 1132(g)(2)(D). "[C]ourts routinely make awards for costs pursuant to ERISA in confirmation proceedings." *Loc. 363, United Elec. Workers of Am., Int'l Union of Journeymen & Allied Trades v. Laser Lite Elec., Inc.*, No. 17-CV-0267 (DLI) (SMG), 2017 WL 9939041, at *6 (E.D.N.Y. Nov. 9, 2017) (quoting *Abondolo v. Jerry WWHS Co.*, 829 F. Supp. 2d 120, 130 (E.D.N.Y. 2011)); *see also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). "The party requesting reimbursement of its costs, however, must provide the court with adequate documentation not only showing costs were incurred, but that they were paid." *Finkel v. KLK Elec., Inc.*, No. 19-CV-4945 (NG) (SJB), 2020 WL 3885739, at *4 (E.D.N.Y. June 25, 2020) (internal quotations and citation omitted).

13

Here, Petitioner's counsel has failed to provide any documentation of the costs they seek to recover. Without documentation to show that the costs claimed were in fact incurred and paid, the Court cannot award such costs. However, the Court will award the filing fee of $405, because the docket indicates that this fee was paid by Petitioner's counsel. (*See* 1/17/2025 Dkt. Entry); *see also Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-0920 (KAM) (VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket). Therefore, the Court awards Petitioner $405 in costs.

## CONCLUSION

For the reasons stated above, the Court confirms the Award in full and grants Petitioner's motion. The Court orders Respondent to pay the total Award amount of $72,217.61 as follows:

1) $27,598.64 in delinquent payroll contributions owed Petitioner and $1,109.25 in interest on the same;

2) $3,408.88 in additional interest on the unpaid contributions owed Petitioner;

3) $10,844.91 in liquidated damages owed Petitioner;

4) $26,625.90 in delinquent payroll contributions owed Empower and $80.03 in interest on the same; and

5) $2,550.00 in attorneys' fees and costs incurred as part of the arbitration.

The Court also orders Respondent to pay Petitioner $1,645 in attorneys' fees and costs arising out of the Petition and post-judgment interest to be calculated by the Clerk of Court in accordance with 28 U.S.C. § 1961.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 28, 2025
       Brooklyn, New York